1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  MICHELLE LYNN BURNELL,                    CASE NO. C22-0265JLR

11                     Plaintiff,              ORDER

12           v.

13  LEWIS BRISBOIS BISGAARD &
    SMITH LLP, et al.,

14
                       Defendants.
15

## I.   INTRODUCTION

16

Before the court is *pro se* Plaintiff Michelle Lynn Burnell's emergency motion for

17

a temporary restraining order ("TRO") and preliminary injunction.  (Mot. (Dkt. # 64); *see*

18

*also* Prop. Order (Dkt. # 66).)  Defendants Lewis Brisbois Bisgaard & Smith LLP

19

("Lewis Brisbois"), Heather M. Jensen, and Annemarie McDowell (collectively,

20

"Defendants") oppose the motion.  (Resp. (Dkt. # 70).)  The court has considered the

21

//

22

ORDER - 1

parties' submissions,[1] the relevant portions of the record, and the governing law. Being fully advised,[2] the court DENIES Ms. Burnell's motion.

## II.   BACKGROUND

Ms. Burnell worked as a legal assistant at Lewis Brisbois's Seattle office during the onset of the COVID-19 pandemic. (*See* Am. Compl. (Dkt. # 35) ¶¶ 4.7, 4.14.) The recent loss of her mother had left her "traumati[zed]." (*Id.* ¶ 4.8.) When the pandemic hit, Ms. Burnell requested that she be allowed to work in person and did so as part of the office's "skeleton crew." (*See id.* ¶ 4.10.) On April 8, 2020, another Lewis Brisbois employee arrived at the office with symptoms of a respiratory illness, making Ms. Burnell extremely uncomfortable. (*See id.* ¶ 4.9.) Although the firm administrator "corrected the situation" by telling the sick employee "that she needed to go home," Ms. Burnell left work that day "in severe confusion, duress and uncontrollably crying." (*Id.*)

On April 9, 2020, the firm administrator "reprimanded" Ms. Burnell for her actions the day before and informed her that she "needed to . . . work remotely." (*Id.* ¶ 4.10.) Ms. Burnell left that meeting "sobbing." (*Id.* ¶ 4.11.) When she arrived at home, she realized that her laptop "was not configured to [Lewis Brisbois's] system," which caused her "to not be up and running with the tools to be successful." (*Id.* ¶ 4.12.)

//

---

[1] Pursuant to Local Civil Rule 65, Ms. Burnell was not permitted to file a reply brief. *See* Local Rules W.D. Wash. LCR 65(b)(5) ("[N]o reply will be permitted.").

[2] Neither Ms. Burnell nor Defendants request oral argument. (*See generally* Mot.; Resp.) Pursuant to the Local Civil Rules, the court decides this motion without oral argument. *See* Local Rules W.D. Wash. LCR 65(b)(3) ("The court may consider the motion on the papers or schedule a hearing.").

While working remotely, Ms. Burnell attempted to "handle [her] case load of approximately 150 cases," but she alleges Lewis Brisbois's failure to provide her with "reasonable accommodation[s]" led to her "coworkers taking jabs at [her] work." (*Id.* ¶ 4.14.) Ms. Burnell asserts that she developed "multiple mental health issues" because of Lewis Brisbois's "failure to act at all" to remedy the situation. (*Id.* ¶ 4.15.) She alleges "negligence" and the denial of "her right[s] to life, liberty and justice for all." (*Id.* ¶¶ 4.14, 4.16.)

Throughout this litigation, Ms. Burnell has been an inactive employee at Lewis Brisbois. (*See* Answer to Am. Compl. (Dkt. # 45) ¶ 2.1 ("Defendants admit that Plaintiff is an employee of [Lewis Brisbois as of August 8, 2022].").) Lewis Brisbois's employee health insurance policy provides that "employees must work an average of 30 or more hours per week" to be eligible to enroll in employer-paid benefits. (Resp. at 2; *see also* Bowers Decl. (Dkt. # 71) ¶ 2, Ex. A (Lewis Brisbois's Benefits Guide).) Ms. Burnell has not performed work for Lewis Brisbois—and thus has been ineligible for paid health insurance benefits under Lewis Brisbois's policies—since "suffer[ing] a mental health crisis while in [a] meeting" on December 2, 2020. (Am. Compl. ¶¶ 4.1-4.2; *see also* Bowers Decl. ¶ 13, Ex. G ("2/26/21 Letter") (explaining to Ms. Burnell that her employer-paid insurance coverage ended in December 2020).) In February 2021, Lewis Brisbois informed Ms. Burnell that she would need to begin paying the full premiums for her health insurance and other benefits or risk losing coverage. (2/26/21 Letter; *see also* Bowers Decl. ¶ 18, Ex. K (reiterating this message in March 2021).) Ms. Burnell, however, has never paid these premiums (Bowers Decl. ¶ 19), and Lewis Brisbois

continued to advance her monthly health insurance premiums through October 2023 (Resp. at 6).

Ms. Burnell received notice on September 30, 2023, that "Defendants terminated [her] . . . insurance policies." (Mot. ¶ 11.) She "believe[s] that this is direct retaliation" for walking out of her September 21, 2023 deposition in this case. (*Id.* ¶¶ 7, 10-11.) On October 20, 2023, Ms. Burnell filed the present emergency motion for a TRO and preliminary injunction, seeking to compel Defendants to "immediately reinstate[], retroactively and without further interruption," her health insurance coverage. (Prop. Order at 1; *see also* Mot. at 2.) Ms. Burnell takes medication to manage her mental health "on a daily/nightly basis" and asserts that she cannot stop doing so "without it causing [her] life-threating consequences and/or injuries." (Mot. ¶ 6.)

In response, Defendants assert that Ms. Burnell has "exhausted her Family and Medical Leave ('FMLA')," stopped returning to work in December 2020 "after providing a doctor's note stating that [she] 'w[ould] be able to return to work with normal functionality after her sessions with behavioral health [were] completed,'" and has never paid the premiums for her insurance despite being "told she was required to [do so] in March of 2021" and "on multiple [other] occasions." (Resp. at 2-3, 6, 8.) According to Defendants, Ms. Burnell owes Lewis Brisbois over $25,000 in unpaid monthly insurance premiums. (*Id.* at 6; *see* Bowers Decl. ¶ 20.)

### III. ANALYSIS

The standard applicable to a motion for a TRO is "substantially identical" to the preliminary injunction standard. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,

240 F.3d 832, 839 n.7 (9th Cir. 2001).  "A plaintiff seeking a preliminary injunction must show that:  (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest." *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  A TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter*, 555 U.S. at 22.  It is "never awarded as of right." *See id.* at 24.  In each case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)).

      The Ninth Circuit applies a "sliding scale" approach when considering the *Winter* factors.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011).  "Under this approach, the elements of the preliminary injunction test are balanced, [meaning] a stronger showing of one element may offset a weaker showing of another.  For example, a stronger showing of irreparable harm to [the] plaintiff might offset a lesser showing of likelihood of success on the merits." *Id.* at 1131.  Below, the court reviews the *Winter* factors and explains why a TRO will not issue.

      First, Ms. Burnell "must establish that [s]he is likely to succeed on the merits." *Winter*, 555 U.S. at 20.[3]  She has not done so.  Neither Ms. Burnell's amended complaint

---

[3] The court is not insisting that Ms. Burnell "show a particular, predetermined quantum of probable success." *Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting).  Pursuant to the Ninth

ORDER - 5

nor her motion provide any legal reasons why Lewis Brisbois should be required to continue to pay her insurance premiums while she is not actively working there, nor do they articulate any cause of action that would require Lewis Brisbois to continue making those payments.  (*See generally* Am. Compl.; Mot.)  To the contrary, Ms. Burnell's motion simply recites her view of the facts leading up to Defendants' decision to stop paying for her health insurance coverage.  (*See generally* Mot.)  Thus, because Ms. Burnell has not demonstrated a likelihood of success or "serious questions going to the merits," the court concludes that this factor weighs against granting Ms. Burnell's motion.  *All. for the Wild Rockies*, 632 F.3d at 1132.

Second, Ms. Burnell also bears the burden of demonstrating that she is "likely to suffer irreparable harm in the absence of preliminary relief."  *Winter*, 555 U.S. at 20.  The mere "possibility" of harm is insufficient; Ms. Burnell must "demonstrate that irreparable injury is *likely* in the absence of an injunction."  *Id.* at 22 (emphasis in original).

The court takes seriously Ms. Burnell's statement that she cannot stop taking her medication without it causing her life-threatening injuries.  (Mot. ¶ 6.)  The court is also sympathetic to Ms. Burnell's status as a *pro se* plaintiff proceeding *in forma pauperis* and understands that it will be more difficult and burdensome for her to acquire her medication if Lewis Brisbois is not paying her insurance premiums.  As Defendants point out, however, cases considering the issue conclude that the loss of employer-provided

---

Circuit's "sliding scale" test, the court recognizes that Ms. Burnell may be entitled to "relief based on a lower likelihood of" of success "when the likelihood of [other factors] is very high."  *Id.*; *see also All. for the Wild Rockies*, 632 F.3d at 1131-32 (discussing the "serious questions" test).

health insurance does not constitute "irreparable harm." (Resp. at 7-9.)  For example, the Supreme Court has noted that "external factors common to most discharged employees . . . will not support a finding of irreparable injury, however severely they may affect a particular individual." *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974).  Thus, loss of employer-provided health benefits does not constitute "the genuinely extraordinary situation" requiring "[u]se of the court's injunctive power." *Id.*; *see also Together Emps. v. Mass Gen. Brigham Inc.*, 19 F.4th 1, 8 (1st Cir. 2021) (holding that the loss of "salaries and health insurance" "fall[s] within the category of 'external factors common to most discharged employees'" (quoting *Sampson*, 415 U.S. at 92 n.68)); *Johnson v. Brown*, 567 F. Supp. 3d 1230, 1263 (D. Or. 2021) ("Loss of employer-provided health insurance . . . can be replaced with private health insurance or the continuation of health insurance through the employee's group plan as established in the Consolidated Omnibus Budget Reconciliation Act (COBRA).").  Accordingly, the court concludes that the loss of Ms. Burnell's employer-provided health insurance does not constitute irreparable harm.

The Ninth Circuit has written that, "[i]n the face of a doubtful . . . claim and the absence of irreparable harm[,] . . . [the court] need not consider the final two *Winter* factors, the balance of equities and the public interest." *Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015).  So too here:  because Ms. Burnell has failed to demonstrate a likelihood of success on her claims or that she will suffer irreparable injury absent a temporary restraining order, the court concludes it need not consider the last two *Winter* factors.  Thus, mindful that a TRO is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22,

the court DENIES Ms. Burnell's motion for a temporary restraining order and preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Ms. Burnell's motion for a TRO and preliminary injunction (Dkt. # 64).

Dated this 27th day of October, 2023.

JAMES L. ROBART
United States District Judge